**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Susan J. Thorn,

Plaintiff,

v.

Metropolitan Council,
Amalgamated Transit Union, and
Amalgamated Transit Union, Local 1005,

Defendants.

**MEMORANDUM OPINION AND ORDER**
Civil No. 00-1138 ADM/SRN

---

Sonja Dunnwald Peterson, Esq., Law Offices of Sonja Dunnwald Peterson, Minneapolis, Minnesota, appeared for and on behalf of the Plaintiff.

Gregg M. Corwin, Esq., and Susanne J. Fischer, Esq., Gregg M. Corwin & Associates, St. Louis Park, Minnesota, appeared for and on behalf of the Defendants.

---

## I. INTRODUCTION

Plaintiff Susan J. Thorn ("Plaintiff") filed her Complaint against Defendants in Ramsey County District Court. The case subsequently was removed to this Court on May 4, 2000.[1] Plaintiff's claims include: (1) sex and reprisal discrimination in violation of the Minnesota Human Rights Act ("MHRA"); (2) sex and reprisal discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); and (3) intentional infliction of emotional distress. On November 16, 2000, the undersigned United States District Judge heard Defendants Amalgamated Transit Union's (the "ATU") and Amalgamated Transit Union, Local 1005's (the "Local Union") Motion to Dismiss [Doc. No. 23] Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted. For the reasons

[1] A previous Order [Doc. No. 15] denied Plaintiff's motion to remand.

JAN 12 2001
FILED
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

articulated below, the ATU's and the Local Union's Motion to Dismiss is granted in part and denied in part.[2]

## II. BACKGROUND

The ATU is an international labor organization headquartered in Washington, D.C. Complaint, ¶ 4. The Local Union is a labor organization headquartered in Hennepin County, Minnesota. *Id.* ¶ 5. Defendant Metropolitan Council ("Metro Transit") has employed Plaintiff as a bus operator from March 1997 to the present. *Id.* ¶ 7. Plaintiff has been a member in good standing of the ATU and the Local Union since May 1997. *Id.* ¶¶ 8, 10-11.

From April 1999 to June 11, 1999, Plaintiff's work site was the Metro Transit's garage in Brooklyn Center, Minnesota. *Id.* ¶ 7. Starting around April 1999, Plaintiff's co-workers subjected her to unwelcome sexual advances, requests for sexual favors, and verbal and physical communication of a sexual nature. Complaint, ¶ 12. Although acknowledging the disgusting nature of the sexual harassment Plaintiff alleges, for purposes of this motion it is unnecessary to recite the sordid specifics of the allegations. *See id.* ¶ 12(a)-(q).

The sexual harassment perpetrated by Plaintiff's co-workers "created an intimidating, hostile, and offensive employment for the Plaintiff." *Id.* ¶ 15. In June 1999, Plaintiff reported the incidents of sexual harassment to Metro Transit's Office of Diversity and Equal Opportunity ("ODEO"), which started an investigation. *Id.* ¶¶ 18, 20(a). Contemporaneously, Plaintiff reported the incidents to the ATU and the Local Union. *Id.* ¶ 16. Upon Plaintiff's request, Metro Transit transferred her to a different work site, a garage in Bloomington, Minnesota. Complaint,

---

[2] At this juncture, the Court declines the ATU's and the Local Union's invitation to convert this motion to one for summary judgment. Thus, only the facts as alleged in the complaint will be considered.

¶¶ 7, 20(b).

On June 22, 1999, Plaintiff attended a Local Union meeting where the President of the Local Union announced that the Metro Transit's ODEO is on a "Witch Hunt." *Id.* ¶ 20(i). Plaintiff alleges that the President then instructed the ATU and Local Union members "not to answer any of E.E.O.'s questions even with their Union representative present." *Id.* Plaintiff further alleges that the President has informed the ATU and Local Union representatives that "they are not to talk to the Plaintiff about anything--including matters unrelated to her complaints of discrimination." *Id.* ¶ 20(k). Plaintiff alleges that Union representatives have refused to respond to Plaintiff's inquiries, unrelated to the sexual harassment, regarding workers compensation and a split shift that Metro Transit forced her to take. *Id.*

## III. DISCUSSION

A complaint is properly dismissed under Fed. R. Civ. P. Rule 12(b)(6) for failure to state a claim where "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Kaylor v. Fields*, 661 F.2d 1177, 1180-81 (8th Cir. 1981) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). When examining the complaint, the Court must accept all of the allegations contained therein and all inferences arising therefrom as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). It must be determined whether the well-pleaded allegations of fact, when construed in a light most favorable to the Plaintiffs, state a factual claim upon which relief can be granted on some legal theory. *See Penn v. Iowa State Bd. of Regents*, 999 F.2d 305, 307 (8th Cir. 1993); *Dicken v. Ashcroft*, 972 F.2d 231, 233 (8th Cir. 1992). Plaintiff's complaint should not be dismissed unless she can prove no set of facts in support of her claim that would entitle her to relief. *Conley*, 355 U.S. at 45-46.

**A. Sex Discrimination**

Title VII provides that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . ." 42 U.S.C. § 2000e- 2(a). Title VII is not limited to economic or tangible discrimination, but extends to "sexual harassment so severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment." *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) (internal quotations and citations omitted). "Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult." *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57 (1986). "Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature . . . has the purpose or effect of . . . creating an intimidating, hostile, or offensive working environment." *Id.* at 65 (quoting EEOC guidelines). To state a prima facie claim of hostile environment harassment, plaintiff must show that: she was a member of a protected class; unwelcome harassment in the workplace occurred; the harassment was based on sex; the harassment affected a term, condition, or privilege of employment; and defendant knew or should have known of the harassment and failed to take timely and appropriate action. *See Klein v. McGowan*, 198 F.3d 705, 708 (8th Cir. 1999); *Bales v. Wal-Mart*, 143 F.3d 1103, 1106 (8th Cir. 1998).[3] The essence of the ATU's and the Local Union's argument is that, as a matter of law, Plaintiff's complaint has failed to state a claim that

---

[3] The same standards are applicable to Title VII claims and MHRA claims. *See Klein*, 198 F.3d at 708 (addressing MHRA and Title VII claims simultaneously); *Todd v. Ortho Biotech. Inc.*, 175 F.3d 595, 599 (8th Cir. 1999) (noting that Minnesota courts frequently look to Title VII cases when interpreting the MHRA).

could fulfill the fifth element of the prima facie case as against them.

Unions may be liable under Title VII if they cause or attempt to cause an employer to discriminate. *Carter v. Chrysler Corp.*, 173 F.3d 693, 703 (8th Cir. 1999). However, a union is not liable under Title VII if there is no allegation that the union itself instigated or actively supported the discriminatory acts. *See Anjelino v. New York Times Co.*, 200 F.3d 73, 95-96 (3d Cir. 2000) (holding that the employer, not the union, was responsible for ensuring that the work place was free from sexual harassment); *Carter*, 173 F.3d at 703-04 (holding that union was not liable because plaintiff did not present evidence that the union refused to file a grievance, dealt with her in a discriminatory manner, or prevented the employer from remedying the situation). Here, Plaintiff does not allege that either the ATU or the Local Union caused, attempted to instigate or actively supported the harassment she suffered. Thus, the ATU and the Local Union are not liable for the acts of sexual harassment by Plaintiff's co-workers because they were not Plaintiff's employer. *See Anjelino*, 200 F.3d at 95-96.

Nevertheless, a union that intentionally avoids asserting a discrimination claim against an employer on behalf of one of its members may be liable under Title VII. *See Goodman v. Lukens Steel Co.*, 482 U.S. 656, 669 (1987); *Marquart v. Lodge 837*, 26 F.3d 842, 853 (8th Cir. 1994) (stating, in dicta, that if the union refused to process the sexual harassment complaints of its male and female members, the union may have violated Title VII because a union may not help or encourage its employer to discriminate); *see also York v. American Telephone & Telegraph Co.*, 95 F.3d 948, 956 (10th Cir. 1996) (holding that a union may not refuse to file a valid discrimination claim against an employer on behalf of one of its members simply because of the member's gender). In this case, however, Plaintiff's complaint does not allege that she requested

the Local Union or the ATU to file a sexual harassment grievance against Metro Transit. Absent a request for a grievance, the ATU and the Local Union were under no duty to act. *See Flanigan v. Local 671, Int'l Bhd. of Teamsters*, 942 F.2d 824, 829 (2d Cir. 1991) (finding that absent a specific request that the union pursue a grievance, the union was under no obligation to take further action); *Mechmet v. Four Seasons Hotels, Ltd.*, 825 F.2d 1173, 1178 (7th Cir. 1987) ("[I]f a worker doesn't even ask his union to press a grievance for him he can hardly complain that it has failed to represent him."); *Stelling v. Local 1547, Int'l Bhd. of Elec. Workers*, 587 F.2d 1379, 1391 (9th Cir. 1978), cert. denied, 442 U.S. 944 (1979); *Badlam v. Reynolds Metals Co.*, 46 F.Supp.2d 187, 201 (N.D.N.Y. 1999); *Catley v. Local 277-M, Graphic Com. Int'l. Union*, 982 F. Supp. 1332, 1344 (E.D. Wis. 1997). The complaint does not allege that the Local Union or the ATU refused such a request. Thus, Plaintiff fails to state a claim against the ATU and the Local Union for refusing to process a sexual harassment grievance against Metro Transit. *See Patel v. Albano*, No. 97-6780, 1998 WL 726475, at * 3 (S.D.N.Y. Oct.13, 1998) (holding that the complaint failed to state a claim because "[a]t no place is it alleged that plaintiff ever requested [a union official] to file a formal grievance or take any official action.").

While Plaintiff does not allege that she requested the Local Union or the ATU to file a grievance against Metro Transit and was denied, she avers that she reported the incidents of sexual harassment to the Local Union and ATU, who then "failed to take timely and appropriate remedial action." Complaint, ¶¶ 16-17. As discussed above, the employer, not the union, bears the ultimate responsibility for ensuring that the work place is free from sexual harassment. *See Anjelino*, 200 F.3d at 95-96. Plaintiff had reported the incidents to Metro Transit, which was

conducting an investigation. Complaint, ¶ 18. Although Plaintiff's allegations may indicate passive acquiescence by the ATU and Local Union, Plaintiff does not allege a violation of the duty of fair representation.[4] Because neither the Supreme Court nor the Eighth Circuit have held a union liable under Title VII for acquiescing in a discriminatory workplace, union liability under Title VII requires something "far more than mere passivity." *Goodman*, 482 U.S. at 666-67; *see Martin v. Local 1513*, 859 F.2d 581 (8th Cir. 1988). Plaintiff has failed to allege conduct beyond passivity on the part of the ATU and the Local Union. Thus, Plaintiff's allegations do not state a claim against the ATU and the Local Union. *Cf. Randolph v. Communications Workers of America*, 116 F.3d 1484, 1997 WL 357890, *1 (8th Cir. 1997) (affirming district court's dismissal of claims against a union because plaintiff failed to allege that the union mishandled his labor grievance for a discriminatory reason). Plaintiff's sex discrimination claims against the ATU and the Local Union are dismissed.

**B. Reprisal Discrimination**

Title VII provides that "[i]t shall be an unlawful employment practice for . . . a labor organization to discriminate against any member thereof . . . because he has opposed any practice made an unlawful employment practice by this subchapter . . ." 42 U.S.C. § 2000e- 3(a). To establish a prima facie case of reprisal discrimination, Plaintiff must show that she engaged in statutorily protected conduct, she suffered an adverse employment action, and the existence of a

---

[4] To establish a prima facie Title VII case against a union based on a breach of the duty of fair representation, plaintiff must show that union breached the duty, and that the breach was motivated by the complainant's race, color, religion, sex, or national origin. *Carter v. Local 789, United Food and Commercial Workers*, 963 F.2d 1078, 1082 (8th Cir. 1992); *Martin v. Local 1513 and Dist. 118 of the IAMAW*, 859 F.2d 581, 584 (8th Cir. 1988).

causal connection between the adverse action and the protected conduct. *Kiel v. Select Artifacts, Inc.*, 169 F.3d 1131 (8th Cir. 1999).

Plaintiff's reporting of the sexual harassment to Metro Transit, the Local Union, and the ATU is statutorily protected conduct. For the adverse employment action requirement,[5] Plaintiff identifies the Union representatives' refusal to respond to Plaintiff's inquiries unrelated to her sexual harassment reports, including her questions regarding workers compensation and a split shift that Metro Transit forced her to take. Complaint ¶ 20(k). Such allegations, construed in a light most favorable to the Plaintiff, may constitute adverse employment actions. *See Johnson v. Palma*, 931 F.2d 203, 207 (2d Cir. 1991) (finding adverse employment action where a plaintiff is deprived of the ability "to expeditiously ascertain and enforce his rights under [a] collective bargaining agreement with his employer."); *McCauley v. Greensboro City Bd. of Educ.*, 714 F.Supp. 146, 152 (M.D.N.C. 1987) (refusing summary judgment on grounds that the union's suspension of the grievance procedure was not an adverse act as a matter of law).

The causation element arguably could be satisfied by the close temporal relationship of the ATU's and Local Union's alleged refusal to respond to Plaintiff's inquiries and her complaints of sexual harassment in the workplace. Generally, something more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation. *Kiel*, 169 F.3d at 1136. Here, the alleged "witch hunt" comment and alleged instructions not to speak to Plaintiff may provide that "something

---

[5] Although Plaintiff argues that the hostility she faced after her transfer to the Bloomington garage constitutes adverse employment action, such allegations of ostracism by co-workers cannot be the foundation for a retaliation claim. *See Scusa v. Nestle USA Co., Inc.*, 181 F.3d 958, 969 (8th Cir. 1999).

more" than proximity in time. At this motion to dismiss stage, Plaintiff's allegations are sufficient because her allegations and all inferences that may be drawn from them, when construed in a light most favorable to the Plaintiff, must be accepted as true.

**C. Intentional Infliction of Emotional Distress**

To establish a claim for intentional infliction of emotional distress, Plaintiff must show that the ATU and the Local Union intentionally or recklessly engaged in extreme and outrageous conduct, causing her emotional distress, and the distress was severe. *See Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 438-39 (Minn. 1983). The Minnesota Supreme Court has stressed the limited scope of such claims and warned that they are "sharply limited to cases involving particularly egregious facts." *Id.* at 438-39. Indeed, Plaintiff must identify conduct "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." *Id.*

A well-pleaded complaint must contain something more than mere conclusory statements that are unsupported by specific facts. *See Kaylor*, 661 F.2d at 1183 (finding that plaintiffs set forth no specific facts to support their allegations). Plaintiff's complaint fails to state a claim against the ATU and the Local Union upon which relief can be granted for intentional infliction of emotional distress because Plaintiff's complaint does not allege extreme and outrageous conduct on the part of the ATU or the Local Union. In opposing the present motion, Plaintiff fails to identify any specific conduct by the ATU or the Local Union, merely presenting the conclusory assertion that their actions constitute intentional, extreme and outrageous conduct. *See* Mem. Oppos., at 19-20. The only specific conduct alleged in the complaint is the Local Union President's "witch hunt" remark and instructions to Local Union members not to talk with

the ODEO. *See* Complaint, ¶ 20(i). Such comments do not rise to the level of extreme and outrageous conduct. *See Meleen v. Hazelden Found.*, 740 F.Supp. 687, 694 (D. Minn. 1990); *Pecore v. Lewis Truck Lines, Inc.*, No. C9-92-14559, 1994 WL 517621, *2 (Minn. Dist. Ct., May 9, 1994). Plaintiff's claims for intentional infliction of emotional distress against the ATU and the Local Union are dismissed.

## IV. CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

(1) The ATU's and the Local Union's motion to dismiss Plaintiff's sex discrimination claim is **GRANTED**.

(2) The ATU's and the Local Union's motion to dismiss Plaintiff's reprisal discrimination claim is **DENIED**.

(3) The ATU's and the Local Union's motion to dismiss Plaintiff's intentional infliction of emotional distress claim is **GRANTED**.

BY THE COURT:

Ann Montgomery

ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE

Dated: January 12, 2001