**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Susan J. Thorn,

Plaintiff,

v.

Metropolitan Council,
Amalgamated Transit Union, and
Amalgamated Transit Union, Local 1005,

Defendants.

**MEMORANDUM OPINION AND ORDER**
Civil No. 00-1138 ADM/SRN

---

Sonja Dunnwald Peterson, Esq., Law Offices of Sonja Dunnwald Peterson, Minneapolis, Minnesota, appeared for and on behalf of the Plaintiff.

Gregg M. Corwin, Esq., Gregg M. Corwin & Associates, St. Louis Park, Minnesota, appeared for and on behalf of the Defendants.

---

## I. INTRODUCTION

Plaintiff Susan J. Thorn's ("Plaintiff") remaining claim[1] is for reprisal discrimination in violation of the Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363.01, subd. 7, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-3(a). On June 19, 2001, the undersigned United States District Judge heard Defendants' Amalgamated Transit Union's (the "ATU") and Amalgamated Transit Union, Local 1005's (the "Local Union") Motion for Summary Judgment [Doc. No. 44]. For the reasons articulated below, the ATU's and the Local Union's Motion is granted.

---

[1] An Order dated January 12, 2001, dismissed Plaintiff's sex discrimination and intentional infliction of emotional distress claims against Defendants ATU and Local Union. A Stipulation and Order dated March 19, 2001 [Doc. No. 41], dismissed Defendant Metropolitan Council as a party to this action.

FILED JUL 3 0 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD JUL 3 0 2001
DEPUTY CLERK

## II. BACKGROUND

Metropolitan Council ("Metro Transit") has employed Plaintiff as a bus operator from March 1997 to the present. Plaintiff is a member in good standing of the ATU and the Local Union. In early 1999, Plaintiff's work site was the Metro Transit's garage in Brooklyn Center, Minnesota. Sometime in April 1999, Plaintiff's co-workers subjected her to unwelcome sexual advances, requests for sexual favors, and verbal and physical communication of a sexual nature. In June 1999, Plaintiff reported the incidents of sexual harassment to Metro Transit's Office of Diversity and Equal Opportunity ("EEO"), which started an investigation. Contemporaneously, Plaintiff reported the incidents to the ATU and the Local Union. Upon Plaintiff's request, Metro Transit transferred her to a different work site, a garage in Bloomington, Minnesota. The Local Union cooperated in this transfer, waiving the contractual provision, which provided transfers only at the time of a system pick. Plaintiff claims that the Local Union and ATU retaliated against her as a result of her reporting the sexual harassment.

## III. DISCUSSION

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A genuine issue of material fact does not exist "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The movant has the burden of showing that no genuine issue of material fact exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the movant meets its Rule 56(c) burden, the non-movant "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). When weighing the evidence offered by the parties on a motion for summary judgment, this Court must review the evidence and all inferences drawn from that evidence in the light most favorable to the party opposing the motion. *See Matsushita*, 475 U.S. at 587. The nonmovant, however, "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586.

Title VII provides that "[i]t shall be an unlawful employment practice for . . . a labor organization to discriminate against any member thereof . . . because he has opposed any practice made an unlawful employment practice by this subchapter . . ." 42 U.S.C. § 2000e- 3(a). To establish a prima facie case of reprisal discrimination,[2] Plaintiff must show that she engaged in statutorily protected conduct, she suffered an adverse employment action, and the existence of a causal connection between the adverse action and the protected conduct. *Smith v. Ashland, Inc.*, 250 F.3d 1167, 1173 (8th Cir. 2001); *Bogren v. Minnesota,* 236 F.3d 399, 407 (8th Cir. 2000); *Kiel v. Select Artifacts, Inc.*, 169 F.3d 1131 (8th Cir. 1999). Although Plaintiff's reporting of the sexual harassment to Metro Transit, the Local Union, and the ATU is statutorily protected

---

[2] The analysis of retaliation claims under the MHRA, Minn. Stat. § 363.01, subd. 7, is consistent with the ubiquitous *McDonnell-Douglas* burden shifting framework used under Title VII, 42 U.S.C. § 2000e-3(a). *See Hasnudeen v. Onan Corp.,* 552 N.W.2d 555, 556-57 (Minn. 1996).

conduct, she fails to present sufficient evidence of any adverse employment action she suffered as a result. Absent proof of the requisite adverse employment action, Plaintiff's retaliation claim must fail.

An adverse employment action must be demonstrated by a material employment disadvantage, such as a change in salary, benefits, or responsibilities. *Bradley v. Widnall*, 232 F.3d 626, 632 (8th Cir. 2000). "[N]ot everything that makes an employee unhappy is an actionable adverse action." *Montandon v. Farmland Indus., Inc.*, 116 F.3d 355, 359 (8th Cir. 1997). A plaintiff must establish a "materially adverse impact" on the terms or conditions of her employment. *Sowell v. Alumina Ceramics, Inc.*, 251 F.3d 678, 684 (8th Cir. 2001). Working conditions that cause no materially significant disadvantage to the employee or disappointment with changes in one's employment situation do not rise to legally cognizable adverse employment actions. *Id.*

The record is clear that Plaintiff suffered no diminution in her title, salary or benefits. Upon her own request, Metro Transit transferred her, with the Local Union's cooperation, from the Brooklyn Center garage to the Bloomington garage. Plaintiff's request for a transfer did not result in any material change in compensation, job responsibilities or working conditions. This transfer was not an adverse employment action. *See Scusa v. Nestle USA Co., Inc.*, 181 F.3d 958, 969 (8th Cir. 1999).

Plaintiff also identifies as adverse employment actions the union representative's refusal to respond to Plaintiff's inquiries unrelated to her sexual harassment reports, including her questions regarding workers compensation and a split shift that Metro Transit forced her to take.

After the union representative was specifically instructed to direct all communication through the respective attorneys, the union representative told Plaintiff that he could not speak to her directly and she should contact the union legal counsel. *See* Abramowicz Dep., at 21-28. Due to the circumstances of this litigation and a request from Plaintiff's counsel,[3] the union legal counsel had advised union officials not to speak with Plaintiff directly and to have her attorney call the union attorney. *Id.* Nevertheless, the Local Union did not fail to represent Plaintiff's rights adequately. Plaintiff never asked the Local Union to file a grievance regarding workplace issues. A union has no obligation to take further action on a worker's behalf if she has not specifically asked the union to grieve the matter. *See Flanigan v. Local 671, Int'l Bhd. of Teamsters*, 942 F.2d 824, 829 (2d Cir. 1991); *Mechmet v. Four Seasons Hotels, Ltd.*, 825 F.2d 1173, 1178 (7th Cir. 1987); *Stelling v. Local 1547, Int'l Bhd. of Elec. Workers*, 587 F.2d 1379, 1391 (9th Cir. 1978); *Badlam v. Reynolds Metals Co.*, 46 F.Supp.2d 187, 201 (N.D.N.Y. 1999). Plaintiff has not shown a materially significant disadvantage to her employment.

Plaintiff also points to President Rossman's comment, "the EEO is on a witch hunt," which he made at the union meeting on June 22, 1999, as evidence of adverse employment action. It is not. The Local Union has a duty of fair representation to ensure due process for all its members during employer investigations of misconduct. Mindful of the union's duty and past experiences with the EEO's investigations, Rossman believed it was necessary to alert all union members that an investigation was proceeding and to advise them to be careful. Rossman Dep., at 72. When the EEO conducted an investigation into sexual harassment complaints in 1995, the

---

[3] Plaintiff's counsel had requested that she be present for any communication union officials had with Plaintiff regarding the litigation. *See* Corwin Aff. Ex. H, I.

Local Union felt its members were harassed and terrorized. *See id.* at 55-56, 59, 73-74; Sommers Dep., at 84-85. After the 1995 EEO investigation, some union members alleged that the EEO interviewed them and drafted statements purporting to constitute their answers, but the statements misrepresented the truth. Rossman Dep., at 56. Consistent with the union's duty to represent all its members, Rossman cautioned members to have union representation present when interviewed by the EEO and not to sign any summary statement prepared by the EEO. *See* Corwin Aff. Ex. J, K; Rossman Dep., at 76, 83; Sommers Dep., at 83. Rossman did not mention names or specific allegations involved in the EEO's investigation. The meeting minutes corroborate the context of Rossman's "witch hunt" comment. *See* Corwin Aff. Ex. J, K.

Rossman's comment does not demonstrate that Plaintiff suffered any material employment disadvantage. Neither Plaintiff's compensation nor her responsibilities were affected. That Plaintiff was unhappy with Rossman's comment does not make it an actionable adverse action. *See Montandon*, 116 F.3d at 359.

Finally, Plaintiff has set forth generalized insinuations of shunning by co-workers. Such allegations of ostracism by co-workers cannot be the foundation for a retaliation claim. *See Scusa*, 181 F.3d at 969; *Manning v. Met. Life Ins. Co.*, 127 F.3d 686, 692 (8th Cir. 1997) (holding that hostility, disrespect, or personal animus are insufficient to constitute a material employment disadvantage). Plaintiff argues that Minnesota law supports her contention that shunning by co-workers may constitute adverse employment action, citing *Bradley v. Hubbard Broadcasting, Inc.*, 471 N.W.2d 670 (Minn. App. 1991). This simply was not the holding of the *Bradley* decision. The Minnesota Court of Appeals held that the evidence at trial supported the jury's finding of reprisal discrimination. *Id.* In contrast to the case at hand, Bradley suffered a

demotion in job status, loss of a promotion, poor working conditions, and eventually, termination. *Id.* Here, Plaintiff has failed to demonstrate such adverse acts of reprisal.

## IV. CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that the ATU's and the Local Union's Motion for Summary Judgment [Doc. No. 44] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

BY THE COURT:

ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE

Dated: July 30, 2001

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

**Please forward this announcement to the recipient of this fax.**

---

# The United States District Court, District of Minnesota announces two new programs!

**Expedited Trials** –The Court will begin offering parties an opportunity to participate in a program called Expedited Trials beginning July 2, 2001. This voluntary program offers an alternative to traditional case processing by allowing for a shorter time period from filing to disposition. Discovery and motion practice will be sharply limited as a means to reduce time and expense. Procedural rules are on the Court's website at www.mnd.uscourts.gov. If you would like additional information about the Expedited Trials Program, contact one of our clerk's offices at the phone numbers listed below.

**Courtroom Technology – Phase II** – In June 2001, the District of Minnesota began upgrading, installing, and enhancing the technology available to counsel in the courtroom. The project will continue through early fall and will ultimately upgrade all Article III Judge courtrooms in St. Paul and Minneapolis. To assist counsel with this transition, the District Court is offering a hands-on class, worth one hour of CLE credit at both courthouses. Classes will be held over the lunch hour. Course registration can be done by visiting www.mnd.uscourts.gov or by calling Kristine at 612-664-5125.

**For additional information on either program please visit our website at www.mnd.uscourts.gov.**

---

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500